Is that right? Wait a minute. What have I been told? Mr. Lowell? Yes, sir. Didn't read my crib right. Lowell. Lowell. Lowell. Lowell. Good morning. May it please the court. Counsel. Counsel, good to see you. So, esteemed bench, I was in St. Louis just a few months ago. It was a little warmer, but I was here in front of the court regarding a no-knock case that came out of the Little Rock, the City of Little Rock, and specifically the Little Rock Police Department. And this court issued its ruling in that case, Davis v. The City of Little Rock, last month in a thoughtful order. This is another no-knock case that we're here today on called Davenport, and I think the first point that I'd like to make Is the other one in the briefs? Yes, sir. Is that the one that we've briefed today? No, the one you just talked about. The one I was talking about was just kind of for clarification. It's not in the briefs, but I wanted to distinguish the court's holding last month in Davis. We don't have it. Where's the opinion? How are we going to judge your comparison if you don't give us a 28-J letter and give us the name and the number? Well, Your Honor, I apologize. Well, you're taking us outside the record and outside of anything that's before us. Oh, well, it really – I understand, Judge, and it's not really a pivotal point, I suppose, but this case – Well, now you've brought it up. I want to know the name and the docket number of the case. I could certainly provide that to you, Your Honor, now or after argument. Well, if you're not going to argue it, then just after argument, please. Sure, sure. Well, there was a case called ZJ versus the Kansas City Board of Police Commissioners. This was an Eighth Circuit case in 2019. The prior case that I discussed that we will not discuss again relied heavily on ZJ. Essentially what the court said in that case was that it was kind of unresolved whether a detective's decision to use SWAT would violate the Fourth Amendment. What we have here is a no-knock case where narcotics detectives enlisted the aid of a SWAT team and performed no-knock raids on two dwellings or two homes based on the evidence under the authority of only one warrant. And so I just wanted to bring to the Court's attention that the prior holdings in this area are not implicated by the arguments being made today by counsel, by myself. This case presents something a bit different because it has – I didn't understand that the issue whether it was reasonable to call in the SWAT team, which drew a mixed panel decision and ZJ. I didn't understand that was raised on appeal. That was raised – that was cited in plaintiff's case. Is it in your statement of issues? I did not think so, so I didn't prepare on that issue. Well, I'm sorry for bringing before the Court maybe what could be viewed as extraneous matters. Let me just cut to the chase if I could about this particular case, and I apologize to the Court. So, you know, we're here before the Court on a Fourth Amendment matter, but really it has less to do with the Fourth Amendment, has less to do with the criteria for executing no-knock raids, but it has more to do with the summary judgment standard on appeal, or standard in the Court below, rather. We submitted sufficient evidence, we believe, the plaintiffs, to withstand summary judgment scrutiny, and there's basically two issues before the Court today. First, in this particular explosive no-knock raid, which involves the detonation of explosive devices for entry, you know, was it objectively reasonable given the circumstances? And we argue that it was not for a number of reasons. Attendant to this particular no-knock raid was a police-involved shooting, which is the second aspect or the second issue before the Court. The District Court granted summary judgment finding no contested issues of fact regarding both the nature of the raid, which was explosive, despite what we hold was not sufficient evidence to warrant, not just the no-knock raid, not just the use of SWAT, but the use of explosive devices when there's no indication of violence or weapons at the household. Now, how much difference does it make to your argument whether the District Court's finding that the SWAT team knew about, was in the planning meeting, knew about the shooting video? Because that would be clear error review if you're attacking that finding. Well, what I'm saying is, or what the plaintiff's position is, is that there's absolutely no evidence of this video prior to the date of the raid. There's no evidence of it. So you're attacking the finding? Yes. And that's clear error review? Inherent, I'm sorry, Judge. Well, the standard review is critical in our Court. Yes. You know, if you're saying that even with the shoot-up video, there wasn't enough to justify the entry. That's not the plaintiff's point. That's not our position. You're saying the video, there was no evidence of the video. Yes, sir. So you are attacking a fact-finding inherent in the District Court's summary judgment? Inherent, yes. I'm not sure the Court directs it head-on. So, you know, the parties are, I think, in agreement here on a number of issues. I think all that really matters or all that really remains are these fact issues. I think the parties agree that if two dwellings were broached or breached, rather, on one warrant, that's a Frank's problem when it's not articulated in the affidavit seeking that authority. That's a material omission. I don't understand that. What case supports that? I don't understand it. There are two warrants issued. I know you say you can't find a second warrant or they didn't prove the second warrant, but the District Court was satisfied there were two warrants. Well, Your Honor, the point that we're trying to make is there were two warrants. There was one that was disclosed in discovery, but there's no mention of any two warrants prior to the – I don't understand why that's reversible error. Because if there was only one warrant and two homes were breached, that would be a Frank's violation and a Fourth Amendment violation. It would show that in securing – Two adjacent homes? I mean, that's a whole, you know, or a home and a shop. Well, they're both residences and they both have their own addresses and mailboxes, and mail is received at each of those dwellings. Okay, but there's only one warrant. It depends on what's said in the affidavit and what's said in the warrant. One at a guard. One warrant can issue for the search of more than one car, home, whatever. Well, I believe that the case law is pretty established that if you have one warrant, you can only enter one dwelling. What's the best case on that? I've never had that issue. Your Honor, the basis of that – I don't have the holding for that off the top of my head, unfortunately. No, I didn't see it in the brief either. I thought – I finished reading the two warrant argument, and I said, where's the reversible error? I believe it's axiomatic, Judge, that you can only enter one home when they have separate addresses. There's a case that comes to mind that says that even adjacent apartments that are right next to each other, you need two warrants to enter into each of those in Unit A. No, you can have one warrant that names them both. Well, I would agree with that, but this one warrant doesn't name both addresses. It only names one address. It doesn't name Apartment A and Apartment B. It only names Apartment A, so to speak. There was considerable evidence that there were two warrants, and the district court held that there was really no dispute on that. Isn't that correct? No, I don't believe that that's correct, Your Honor. None of the statements that were pre-raid mentioned two warrants. They all mentioned one warrant. I know, but there was evidence from the keeper of the records or something, Judge Lytle, isn't that right, that there were two warrants in the court file. Isn't that correct? There were two warrants in the court file. One of them – I'm sorry, let me finish. I beg your pardon. I was taking a breath there. I wanted to finish my sentence. Thank you. That's okay, Judge Arnold. Of course. I believe that's what the district court said. One of those warrants had a stamp and the other didn't, but both of them were dated after the date of the raid, so there's no evidence even based on the file stamping that those were in the possession of the – The file stamp – one didn't have a file stamp, but the court employee testified that they were dated in the court file. They each had – I'm sorry, I'm going to change it. They each had stamped files in terms of the dates. Only one of them had the court seal. Yes, the seal. Right. But even if you go by the dates on each of these warrants, they both were file stamped after the raid, the next day. There's only one photograph of any warrant among the 200-plus photographs. So the evidence really establishes, or at least it certainly does not establish the existence of two warrants. So you're saying the district court erred in this holding on summary judgment? There is a dispute as to that fact? It's police position that we submitted enough evidence to draw into serious question a movement's right to summary judgment where there's these kinds of issues with the warrants. Okay. Yes, sir. One other question, if I may, about the Titterington expert report that you offered.  I wonder, in your Davis case, 122F4 at 332, there was a report offered in that case as well by Mr. Titterington. Isn't that correct? That is correct. Is this report similar to that? It's similar to that because I think we held it that it was full of legal conclusions and therefore wasn't admissible. Isn't that correct? I didn't hear the second part. It's the same kind of report. I don't think the judge, in fact, for me to speak about Davis, I don't think Judge Moody addressed the report in his order in that case. He didn't address it at all in this case. There was a report in that case by the same person. Yes. To answer your question, there are some similar opinions in terms of the Monell evidence and the systemic use of these affidavits. But, for instance, one of the findings of Mr. Titterington in this case is that there was no information of any violence or violence threat that would justify not the use of SWAT, but rather the explosive entry, which is the higher risk. And that's because there were no boxes checked when one asked if there was any reason to believe that the owner owned a gun or a firearm, the box unknown was checked. If these officers were aware of that video prior to the raid, they would have checked the box yes. It doesn't mean proof positive that there's a weapon there, but it says, do you have a reason to suspect or believe? And that video would have made, if that video was. . . What about the timing? Because they didn't execute the warrants right away, correct? That is correct. And so, and I was a little confused on the timing and whether these videos are in the record at all. So first, I guess my first question is, does the record say when the officer said she saw these videos? In other words, was it before the affidavit or after the affidavit, but before the execution? Absolutely not. The record, the discovery record, the file record, the FOIA record is completely silent to any video. There's not a copy of the video in the file. There's not a memo relating to the receipt of the video or the viewing of the video. There's no report about the video. There's no mention of it anywhere in the file. Something that would be that concerning to an officer would truly be in the file. And Detective Calmer was asked directly in this case, and I was surprised by the district court's kind of refusal to accept this testimony or to kind of to disqualify it. The bottom line is. I can't understand what you're saying now. You're looking down. You were surprised by what? The court's willingness, the district court's willingness to ignore it or to construe it in a way that I don't think is a fairly facial reading. My understanding is information can come to the knowledge of officers executing a warrant that may or may not have been known in the application and issuance of the warrant that can affect the manner and reasonableness of the execution. I agree, but there's no. So the lack of things in the file leading up then the warrant file is not not conclusive. Well, but there's also contradicting evidence like checking boxes that run against. The boxes prepared prior to the raid. But before the warrant or. Before the warrant. But there's. Okay. Then an information after the warrant and before the raid. During the. Is relevant to the reasonableness of the raid. During the investigation of this matter, immediately following the execution of the warrant. There's no mention of this video. There's no mention of this video a week later, a month later. There's no mention of this video until deep into litigation. And in this case, many years later, that's the first time the video was ever discussed. First time it was ever raised. So it wasn't in existence in 2016 or there's no evidence of it in 2016, 2017, 18, 19. If the officer did see this video. And relay that to the team that was executing the warrant. Do you. Is your position that that's sufficient for the no knock. I think that that. Given the nature of the work. I think that could be sufficient. But she was asked that question in her deposition. And I asked her. But you hadn't seen those. Meaning the videos. Prior to the no knock raid. She answers, quote, I never had any interaction with any. So no, sir. No, sir, is what she said. But then she does say. I'm assuming this is your question. You're testifying now that you saw the video. Of St. Claire firing that gun before you drafted the affidavits. And she said, yes, sir. Your Honor, this is. Is that not a fact question? Is that not a fact question? Two answers under oath. She said no. Ultimately, it's an issue of law. This is not a. These are not jury questions. Well, I just mean, in a credible sense. Her credibility. I mean, she answered the question. And then she changed the question. Why does that. Why. I don't understand why she gets to clean that up. But you don't. Along with the fact that there's no. Get a trial on a on a Frank's. Issue. You get you get a hearing and you get findings. By the district court in the course of the court's legal conclusion. With respect to the validity of the warrant and the manner of execution. Right. Judge. We're not talking about jury issues here. I'm sorry. You're talking about jury issues. We're not talking about. I'm just talking about getting past summary judgment. Judge. I think. What happened. What happens then. All I'm saying is that I believe that that was an admission. That she had not seen videos. Which was purportedly the basis for the use of explosives. Purportedly the use for the gunplay that went on there. And that caused a shooting of a man who was handicapped. And who lived in one of these homes. I believe that that's evidence that.  If the district court. Says any fact issues here are. For a hearing before me. Because the ultimate question is law. And I conclude I don't need a hearing. Which is quite common in Frank's. Situations. How do we review that. Judge. All I can answer. In terms of that question. Is the only way I can answer that question is to say. That we believed. I believe that that statement by this officer. Was enough to. To create doubt and to create. A conflicting effect. And to create a credibility issue with this particular witness. Who's giving this information in a self-interested way during litigation. In tandem with the fact. In combination with the fact that there's no evidence to support. No objective evidence to support. That this was indeed a basis for the nature of this particular type. Of warrant execution. Gets us through. Some right judgment. The Frank's issue is more about the one warrant. Versus the two warrant issue. That's the Frank's issue that we're talking about. The fact that. To say that you're looking for one warrant from a judge. But really what you're looking to do is execute two of them. If believed by a jury. Creates a Frank's issue. I thought they applied for two. I'm sorry. I thought they applied for two. I got. The wrong case here. Did. I thought on different days they applied. They applied for. Do you mean with the judge?  I'm not sure what you mean by applied judge. Applied. Did they apply for two warrants or for one? From the judge. Is that what you're referring to? Well, yeah. Obviously, you submit a warrant application to a judge. Well, in this case, we have an issue with these boilerplate motions. With these boilerplate affidavits. I can't say. I can't sit here and say that that happened. Do they bear two different dates? I believe they do. I thought so. I'm not sure. I'm not sure that that. That doesn't change. I don't see the reversible error on the two warrant issue. With respect to the grant of grant of summary judgment. We're reviewing. I can understand why it would be. Raised and. Complained about. But then the district court sorts it out. Yeah. Well, the district court did not articulate in the least many of the bases for the decision that it arrived at. It doesn't need to. It doesn't need to. All right. Well. I understand your position. I'm out of time. Thank you very much, Judge. So, Ms. Gibson. You're representing the officers, right? Yes, Your Honor. Thank you. Good morning, Your Honors. Counsel. May it please the court. I'm Gabrielle Gibson. And I represent the individual appellees. Russ Littleton. Amber Calmer. Jason Follett. Matthew Thomas. Vicki Keithley. Timothy Calhoun. And Kenneth Temple in their individual capacities. These individuals are requesting that this court affirm the district court's order granting summary judgment and qualified immunity to them. As this court knows, the court does not accept unreasonable inferences or speculation or misrepresentation of the facts in the record as evidence to overcome summary judgment. And that's what appellants have offered here. Appellants have not pointed to any specific facts in the record that blatantly contradict the district court's findings of fact by which this court is bound. And going to the district court, the findings of fact that kind of need to be fleshed out here, the district court properly found that two search warrants existed. Those search warrants are in the record and the search warrant affidavits in the officer defendant's appendix pages 221 through 232. So the actual... 221 or 231? 221 through 232, your honor. Thank you. The first... The by and... The controlled by and the affidavit for the search warrant for the house, that was on August the 17th. And the actual warrant was issued on the same day, August the 17th, and this is 2016. The controlled by that occurred at the shop was on August 29th. And Detective Calmer submitted her affidavit for the search warrant for the shop on August the 31st and received the warrant on that same day. Aside from there being two warrants that exist, the actual documents in the record, there was an affidavit from the district court clerk, Miss Tiffany Keene. And she testified that, one, she personally knows Judge Lytle's signature and so she can attest that that's her signature on each warrant. And she also testified that the warrants had been maintained in the court records since they had been issued by the judge. There was also a statement from Lieutenant Calhoun in his internal affairs interview, which is on the officer defendant's appendix, page 315. Where Lieutenant Calhoun clearly refers to there being two separate warrants that the SWAT team was to execute. One warrant for the house and one warrant for the shop. The fact that both of the warrants had the 3220 King Road address, the district court found that that was not fatal to the probable cause determination for the warrants. Because the sufficiency of the description of the places to be searched was found. One of the warrants and affidavits for the search warrant for the house described the house as a single level white house. And the affidavit for the search warrant and the warrant for the shop described the shop as a yellow shop with the doors facing east. There's no dispute that the officers were aware of the two structures. They could easily identify the two structures that needed to be searched that day. On September the 1st of 2016 is when both warrants were simultaneously executed. Also, the evidence in the record about Detective Calmer viewing the Facebook videos prior to her application for the warrants, that is found in Detective Calmer's deposition, which in the beginning, I believe that she just misunderstood the question because her answer was, I had never had any interaction with Amy. And Amy St. Clair was the person who was shooting guns in these videos. So is it accurate that these videos, the videos aren't in the record, the Facebook page, the screenshot of any sort, that's not in the record? So in the record before you, Your Honor, on Officer Defendant's Appendix, page 312, the appellees had entered Exhibits 7F, 7G, and 7H into the record. And those are three videos of Amy St. Clair. And are those, those are still the district court? Did those get, when you say they're in your appendix, are the actual videos attached? Yes, Your Honor. There's either a CD or a thumb drive in here. Thumb drive. Okay. So the actual videos, three of them. And in one of the videos, actually, and the, one of the, I believe the officers pointed out the district court level below, but when you watch the video, if you haven't already, you will see that the yellow shop is in the background, very close in proximity to where Amy St. Clair was shooting the guns. One was a handgun and one was some sort of automatic or semi-automatic gun. And the reason that that was important was that Amy St. Clair, according to the reliable CI, officers knew that Amy St. Clair was one of the people that sold drugs to the confidential informant. And I believe that was, she sold the drugs from the house, from the residence, the white residence. So with all of that, not only did Detective Calmer testify in her deposition that she reviewed the videos prior to submitting the warrant applications, she also submitted an affidavit. And in the affidavit, she says again that she watched those videos prior to the warrant applications. And then all of the SWAT people, we have Lieutenant Calhoun, Sergeant Follett, Officer Thomas, and Lieutenant Cumming, they all four testified in their affidavits that Detective Calmer, during the briefing that occurred prior to the search, or prior to the execution of the search warrants, she informed the officers of these videos. And they explained that they couldn't be, the reason why on the warrant service information sheet, that information was not there about the videos and the guns, is that they couldn't be absolutely certain that the occupants of these structures to be searched would have the guns, but they could not discount the high possibility. Why wouldn't that information be included in the affidavit in support of the search warrants? If, in fact, Officer Calmer had this prior, that's a requirement. In order to get a no-knock, you need that reasonable suspicion of the need. And so that is a bit puzzling, and I didn't see an explanation from the officer, except I just didn't do it. Yes, Your Honor, and I agree. I don't think that there is evidence in the record of an explanation as to why, but I do know when looking at the case law, even if it's not included in the affidavit, the officers, based on the totality of the circumstances and the knowledge that they know, they can rely on it, even if it's outside the four corners of the affidavit. As well as the fact that Judge Lytle found that there was reasonable suspicion to eliminate the knock-and-announce requirement because she actually issued both of the warrants. And there's no evidence of any conversation between Officer Calmer and the judge at the time that the affidavit was submitted? I don't believe that's in the record, Your Honor. However, in the Kiesling v. Holliday, it's an Eighth Circuit case. It's 859 F. 3rd 529, and the court in that case said that the officers are entitled to a shield of immunity when they're acting within the authority on the premise that the neutral magistrate had issued the warrants. The Supreme Court case Messerschmitt, it also describes law in this area in the sense that it says that the clearest indication that the officers acted objectively reasonable is when a neutral magistrate issues the warrants. And so the officers would rely on that information. And there's no evidence in the record that any of the officers believed that there was any sort of misinformation or that the judge acted inappropriately or anything like that. There's no evidence of that. Another fact that I wanted to kind of clear up, in Officer Defendant's Appendix, page 254, Lieutenant Calhoun explicitly says that there weren't explosives that were used here. It was a flashbang, which is a distraction device. And so in SWAT terms, those two are different things. And so I just wanted to be clear that that was what the record reflects. So for these reasons, the district court properly found that the officers had probable cause to search the two structures on King Road, the residence and the shop, and they lawfully obtained two warrants that excluded the knock-and-announce provision that were issued by a neutral magistrate, Judge Lytle. And the court also held that the officers lawfully entered each structure. And for that, the district court mainly points to the one element of justifying the threat of violence. So in order to justify the no-knock warrant, there has to be either threat of violence or the knock-and-announce provision. Knock-and-announcing would be futile, or knock-and-announcing would inhibit the effectiveness of the investigation. And Judge Moody here latched onto the first problem, where the knock-and-announcing would present a threat of violence to the officers. And he relies heavily on his finding of fact that Detective Palmer reviewed those videos prior to the application of the warrants and informed the SWAT officers prior to them executing the warrants. There's also evidence in the record to justify the use of the flashbang. According to the ZJ case, that Officer Thomas, who was the only named defendant in this case that used a flashbang, that he scanned the area. He testified to that, as well as there's some sort of flashbang deployment form in the record where it states that he scanned the area. Just one other thing I would like to mention on the deadly force claim. The district court properly made findings of fact with relation to Lloyd St. Clair aiming his shotgun at Officer Thomas. Mr. Lloyd St. Clair pled guilty to aggravated assault. Then he said that he explained that. He said that wasn't right and now I'm telling the truth. Does that create a dispute of fact? No, Your Honor. It's, I believe, the Prosser case that says when you contradict previous sworn testimony, that's not enough to overcome summary judgment. I believe it's Prosser. Not only did he plead guilty, but even during his deposition, he admitted that he had blood running down his arm and he was trying to unjam his shotgun. I think it's clear even based on his testimony of his intent to use that shotgun. For all of those reasons, the district court properly found that a reasonable officer in Officer Thomas' position at the time that he used deadly force would believe that Mr. Lloyd St. Clair posed a significant threat of either death or serious physical injury. So for all of those reasons, the individual appellees request that the court affirm the district court's order in granting summary judgment and qualified immunity to them. And then I'm going to turn it over to the city's counsel. Let me just ask you, what procedure would come next if the summary judgment had been denied on these warrant issues? Based on a disputed fact or just based on the law? Well, the argument that there wasn't enough evidence that this was objectively reasonable to use the flashbang or to use in the two warrant issues, so forth. Well, I suppose if that was the district court's ruling, then my clients would be the appellant? Yes, but no. But what comes next in the district court? District court says, I don't have enough evidence. Aside from trial on the claims? Isn't the next step an evidentiary hearing in the district court with the court then deciding issues of law before a trial? I suppose, Your Honor. I would have to do a little more research on that front, but... Well, you know, if the court says, I need a Frank's hearing in a more typical case, the court conducts a Frank's hearing. And the court then makes findings and a legal ruling with respect to the warrant, the affidavit and therefore the warrant. So we're not talking about a jury trial here, are we? Well, so I believe the Frank's hearing, that would be in the Lloyd St. Clair's criminal case. Right. I believe that's when the Frank's hearing would happen. And then that would decide whether the evidence would be suppressed or not. I believe. But the plaintiffs can't win this civil case without going through the exercise. There had to be error in the criminal process. I don't... Okay. I'm not sure and I haven't... I didn't study ZJ from this perspective where our panel had three different views on different issues. Yes, Your Honor. But it all was a similar ruling with respect to no evidentiary hearing. But people typically say, well, that means I get a trial before a jury. But I don't think that's right here. Yeah, I definitely don't think... It may be significant. It may affect our standard of review. I believe that the district court properly made the findings and upheld the law. Well, of course, you don't make findings in granting summary judgment. Well, his findings of fact. He properly... No, you don't make findings of disputed fact. Correct. Okay. That's what plaintiffs say happened here. Yes, and the appellees do not agree with that. I know. Then what's next? That's... Okay. Thank you, Your Honor. Ms. Perez. Good morning. May it please the court. Opposing counsel. I'm Lynette Perez, appearing today on behalf of the city of Little Rock and our former chief, Kenton Butler. The Derrick Davis case that was found, Your Honor, that cause number is 23-1636. And I had the privilege of arguing that case before the court back in late fall. And I would be making similar arguments today. What case are we talking about? Derrick Davis versus city of Little Rock. And in that case, similar to the case at Barr, my first point was that claims not raised in an opening brief are waived. And in the Davis case and in many cases along the line, this court has held that this court does not accept unreasonable inferences or sheer speculation as fact. In order for the city and Chief Buckner to be held... Or they cannot be held liable if there are no Fourth Amendment or substantive violations of these officers that Ms. Gibson just argued on behalf of. In order for Chief Buckner and for 1983 liability to attach to him, there must be a causal link and a direct responsibility for the deprivation of rights. So plaintiffs must, in their brief, in their argument, articulate specific facts regarding Chief Buckner's personal involvement or direct responsibility. The record is devoid of any such specific facts. Chief Buckner didn't interact with the confidential informant. There's no record that he was involved in submitting an affidavit. Seeking a warrant. Executing a warrant. Involved in the arrest. Involved in the prosecution of the case. In order for the custom, and this is a case in which they're alleging a Monell custom, there must be a notice to the policy maker. And in our case, the policy makers of the city are the mayor and the board of directors. The chief of police are not policy makers. The experts of the plaintiffs are not policy makers. And so the record is devoid of any evidence that would, first of all, show that our policy makers had notice and were blatantly indifferent to that notice. We have the case at bar. There's no other empirical evidence to show that the way that the city officers execute these warrants is unconstitutional. Thank you, Your Honor. Thank you. Mr. Lowe, I'll give you a minute for rebuttal. Why, thank you, sir. Your Honor was right to hone in on the, Your Honor, Judge Kelly was correct to hone in on the temporal aspects of the video of the shoot of the firing of these weapons. There's no mention of it beforehand, only after, and it's murky after. Detective Calmer basically acknowledged that she never saw it, but then changed her answer. Regarding Lloyd St. Clair's criminal course, it is true that he pled out on a charge that involved him acknowledging that he made a menacing gesture toward the officer. But we know that under Graham and its progeny, even if an officer has justifiable force at moment A to use deadly force, it doesn't necessarily follow that he or she has that same justification at moment B. So somebody pleading to such things does not at all preclude a finding that they were also a victim of deadly force. A person who waves the gun and drops it, for instance, cannot be shot, even though they would probably have to plead to aggravate something. And that's all I have for this morning. I thank Your Honors for your time. Very good. Thank you, Counsel. The case has been thoroughly briefed. An argument has been helpful, and we will take it under advisement.